UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:11-CIV-61740-COHN/SELTZER

ESTETIQUE INC. USA, a Florida corporation,

    Plaintiff,

v.

XPAMED LLC, a Florida corporation,
MARIO GUASTELLA, an individual,
and JOSE MONTILLA, an individual,

    Defendants.
_____/

## TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

**THIS CAUSE** matter is before the Court upon Plaintiff's Motion for a Temporary Restraining Order Without Notice and Preliminary Injunction [DE 6] (the "Motion") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. The Court has carefully considered the Motion and Plaintiff's Motion to Exceed Page Limits [DE 5], as well as the attached Declaration of Moshe Segebre [DE 6-1] and the Exhibits [DE 6-2 to 6-6], and is otherwise fully advised in the premises.

Plaintiff seeks a temporary restraining order without notice against a competitor business, which Plaintiff alleges was founded by Defendants Mario Guastella and Jose Montilla, former employees of Plaintiff, who are using Plaintiff's confidential customer information to sell the same products to these customers. Plaintiff's Complaint alleges claims for false advertising and unfair competition under the federal Lanham Act; breach of contract for violating non-compete agreements signed by the individual Defendants, misappropriation of trade secrets under Florida statutory law, and a common law conversion claim.

## I. FACTUAL FINDINGS

In support of its motion, Plaintiff attached the sworn declaration of Moshe Segebre, as well as certain other exhibits supporting its arguments in support of a temporary restraining order. The Court makes the following findings of fact and conclusions of law based upon Plaintiff's sworn pleadings (the Complaint and Declaration of Moshe Segebre), which allege as follows:[1]

A.  Plaintiff is a leading provider of aesthetic and beauty equipment for spas, medical spas and professional aesthetic centers in the United States, the Caribbean, Central and South America, and Mexico.

B.  Plaintiff's success in a highly competitive market is dependent, in part, on its ability to protect its proprietary technology, customer information (both current and prospective), and business forecast information. Plaintiff relies on a combination of trademark, trade dress, and trade secret laws, as well as confidentiality and non-compete/non-solicitation agreements to establish and protect its proprietary rights.

C.  In October 2008, Estetique hired defendant Jose Montilla ("Montilla") as a member of its sales team, allowing Montilla to market Plaintiff's products and services to Plaintiff's broad client and prospective client base. In June 2010, Plaintiff hired defendant Mario Guastella ("Guastella") as a web designer, responsible for maintaining and designing Plaintiff's internet presence.

---

[1] The Court notes that the following portion of this Order is adopted from Plaintiff's proposed order granting the relief, though the Court has fully reviewed the entire record and incorporates Plaintiff's proposed order due to the exigency of the relief requested. These findings are made solely in the context of an ex parte TRO and will be reviewed *de novo* at the preliminary injunction stage of this case.

D.  As a condition of their employment, both Montilla and Guastella executed an "Agreement Regarding Inventions, Confidentiality and Non-Competition" (the "Agreement") which, among other things, provides for the protection of Plaintiff's "Proprietary Information" (defined to include customer lists, marketing or sales information, trade secrets, etc.), a non-competition period of five years post-termination of employment, and a customer non-solicitation period of five years post-termination of employment. Id. The Agreement, as signed by Montilla, is dated October 15, 2008, and is attached to the Complaint as Exhibit "A" [DE 1-5].[2] The Agreement, as signed by Guastella, is dated July 1, 2010, and is attached to the Complaint as Exhibit "B" [DE 1-6].

E.  Both Guastella and Montilla were provided with access to Plaintiff's EmailBrain database, containing the names and contact information of Plaintiff's customers and prospective customers, while they were employed by Plaintiff. Plaintiff considers this information confidential, proprietary, and subject to the restrictions contained within the Agreement. Plaintiff alleges, upon information and belief, that this information was misappropriated by Guastella and/or Montilla prior to their termination of employment with Estetique.

F.  Approximately two weeks following his termination of employment with Estetique, Guastella registered a website for defendant XpaMed LLC ("XpaMed") (together with Guastella and Montilla, the "Defendants"). XpaMed describes itself as a company based in Miami, Florida whose main objective is to design, produce,

---

[2] Defendant Montilla apparently signed this document under the signature line for Estetique, and not under "Employee/Independent Contractor."

3

assemble, sell and distribute high-tech equipment for the cosmetic industry worldwide. XpaMed's website lists as for sale spa and beauty equipment that is substantially similar to the equipment sold by Estetique.

G. Certain of the equipment being sold by XpaMed bears a substantially similar name and form to Estetique's equipment. For example, Estetique sells an anti-cellulite product under the trade name "LipoMax." XpaMed, in turn, is selling a product that looks substantially similar under the trade name "LipoCel." In addition to selling the same categories of products as Estetique, the layout and design of XpaMed's website is strikingly similar to Estetique's website.

H. In some instances, the content of XpaMed's website is the same and was stolen directly from Estetique's website. For example, XpaMed's website contains a press release, located at http://xpamed.com/Press%20Release.html, under the heading "XpaMed launches new line of IPL aesthetic equipment." Exhibit D to Motion [DE 6-4]. The XpaMed press release is a verbatim copy of a July 2010 Estetique press release, available at http://www.prweb.com/releases/2010/07/prweb4219694.htm. Exhibit E to Motion [DE 6-5]. The only difference between the two press releases is the name of the company issuing the press release.

I. XpaMed has been targeting Estetique's clients through both e-mail and telephone solicitations. In these solicitations, XpaMed presents itself as an established, long-standing leader in the spa and beauty equipment supply business. Exhibit F to Motion [DE 6-6]. The e-mail solicitations also contain in-line images of equipment being sold by XpaMed – equipment that appears strikingly similar to that sold by Estetique, but at a substantially lower price.

J.   XpaMed's e-mail solicitations identify XpaMed's products as "FDA Approved," notwithstanding the fact that no such approval exists for XpaMed's products.

K.   Estetique recently learned about these solicitations from several customers who received e-mails and/or calls from XpaMed, which presented itself as the longtime leader in beauty and spa supply equipment. Estetique has been contacted by several of its customers that have expressed confusion concerning why they were receiving these solicitations, many of whom asked whether XpaMed was a new name being used by Estetique. Neither Montilla nor Guastella had contact with any of these customers while employed by Estetique and should not otherwise have access to their contact information. The only source for these mass e-mail and telephone solicitations is the EmailBrain database that both Montilla and Guastella had access to while employed by Estetique.

L.   Montilla now works as an XpaMed salesman under the alias "Daniel Avila." "Daniel Avila" is a frequent contributor to XpaMed's Facebook page, both responding to prospective inquiries and posting information concerning XpaMed's business. The "Daniel Avila" Facebook account was created on or around April 28, 2011 (approximately one month after Montilla was fired), and almost immediately began posting information in support of XpaMed. "Daniel Avila's" Facebook friends include Guastella, whose Facebook friends include Montilla.

## II. LEGAL CONCLUSIONS

Pursuant to Federal Rule of Civil Procedure 65(b), a temporary restraining order may be granted without notice to the adverse party only if: (1) it clearly appears

5

from specific facts shown by affidavit or verified complaint that immediate and irreparable injury, loss or damage will result before the adverse party can be heard in opposition, and (2) the applicant's attorney certified the reasons that notice should not be required. Fed. R. Civ. P. 65(b).

In light of the foregoing, the Court finds that Plaintiff has clearly demonstrated that immediate and irreparable injury, loss, or damage will result to the Plaintiff before the Defendants can be heard in opposition. Defendants are in possession of Plaintiff's confidential and proprietary customer and prospective customer information, are engaged in direct competition with Estetique, and are marketing their products and services to the same limited pool of customers as Estetique. Plaintiff estimates that the continued use of its misappropriated data and competition by the Defendants would immediately and dramatically affect its relationship with current and prospective customers, and would cause irreparable harm for the foreseeable future.

With respect to the issue of notice, Plaintiff contends that if notice is provided to Defendants, it believes that Defendants will destroy important evidence in their possession. Plaintiff bases this belief on the behavior of Defendants in stealing Plaintiff's customer lists, and Defendant Montilla's use of the alias of Daniel Avila to tout the products of Defendant XpaMed. The Court concludes that this evidence is sufficient to warrant issuance of the relief without notice. Therefore, based on the foregoing preliminary findings of fact and law, the Court finds that Plaintiff will suffer immediate irreparable injury unless this Order is granted without notice.

III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Exceed Page Limits [DE 5] is hereby **GRANTED**, in that the 25 page motion will be considered in its entirety;

2. Plaintiff's Motion for a Temporary Restraining Order Without Notice [DE 6] is hereby **GRANTED**;

3. Plaintiff shall immediately post a bond in the amount of $25,000, as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint. This temporary restraining order becomes effective upon posting of the bond;

4. The following definitions apply to this Order:

   (a) The term "Documents" shall include any hard copy documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, e-mail, text messages, and other data and data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

   (b). The term "Estetique Confidential Information" shall mean Documents that the Defendants created, obtained and/or gained access to by virtue of their employment with Plaintiff, including, but not limited to, all customer and prospective customer information misappropriated by the Defendants as alleged in the Complaint.

5. Defendants and their agents, servants, employees, attorneys, as well as any entities and individuals who are acting in concert or participation with them

(collectively, the "<u>Restrained Parties</u>"), are hereby **RESTRAINED AND ENJOINED** as follows pending further Order of this Court:

(a) The Restrained Parties shall not, directly or indirectly, use, disclose, or in any way exploit Estetique Confidential Information.

(b) The Restrained Parties shall not, directly or indirectly, destroy: (i) any Documents containing Estetique Confidential Information; (ii) any Documents stored on any of the Restrained Parties' home and business computers and/or any other electronic data storage media; and (iii) any computer servers, or e-mails or other data on those servers, used to carry out any business during Defendants' employment by Plaintiff or thereafter.

(c) The Restrained Parties shall not, directly or indirectly, engage in, work in, operate, or otherwise participating in any business similar to, or that competes with, the business of Plaintiff.

(d) The Restrained Parties shall not, directly or indirectly, contact, solicit, or transact business with any active customer, or any prospective customer with which Plaintiff was in contact with during the two years dating back from August 5, 2011, the date of the filing of this action.

(e) The Restrained Parties shall not, directly or indirectly, engage in any conduct intended or reasonably calculated to induce or urge any customer of Plaintiff to discontinue, in whole or in part, its patronage or business relationship with Plaintiff; and

6. Defendants and their agents, servants, employees, attorneys, as well as any entities and individuals who are acting in concert or participation with them, are

hereby **DIRECTED** to immediately return to Plaintiff any and all Documents in their possession, custody, or control containing Estetique Confidential Information.

7. Plaintiff shall immediately serve this Order, the Complaint, and all present filings upon Defendants.

8. This Order is binding on the parties to this action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of this Order until August 15, 2011.

9. Defendants may move to modify or dissolve this injunction at any time pursuant to Federal Rule of Civil Procedure 65(b).

10. A hearing on Plaintiff's motion for a preliminary injunction is set for **Friday, August 12, 2011, at 1:30pm**, before the Honorable Judge James I. Cohn, in Courtroom 203E, at the United States District Court, Southern District of Florida, Fort Lauderdale Division, 299 East Broward Boulevard, Fort Lauderdale, FL 33301.

11. Defendants' written response to Plaintiff's Motion for Preliminary Injunction shall be filed and served upon Plaintiff, by 12 noon on Thursday, August 11, 2011.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 5th day of August, 2011 at 5:01p.m.

_____
James I. Cohn
U.S. District Court Judge

copies to: Plaintiff's counsel via CM/ECF